ACCEPTED
07-14-00346-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
12/29/2014 1:52:35 PM
Vivian Long, Clerk

*No. 07-14-00346-CV*

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
12/29/2014 1:52:35 PM
VIVIAN LONG
CLERK

In the Court of Appeals
for the Seventh District of Texas at Amarillo

**JANE T. DURHAM**
*Appellant*

V.

**MARGARET L. DUNHAM, et. al.**
*Appellees*

On Appeal from the 237th District Court,

Lubbock County, Texas

Cause No. 2013-509,100

**APPELLANT'S BRIEF**

# IDENTITIES OF THE PARTIES AND COUNSEL

## APPELANT

Jane T. Durham

Represented on appeal by:

**Michael Sales**
Texas Bar No. 17532060
1601 Broadway
Lubbock, TX 79401
Tel. (806) 763-9493
Fax. (806) 744-5411
Sales5ralls@aol.com

## APPELLEE

Margaret L. Durham, Nancy C. Stewart, David Durham, and Barbara Flourney.

Represented on appeal by:

**Aubrey J. Fouts**
Texas Bar No. 07315000
P.O. Box 5187
Lubbock, TX 79408
Tel. (806) 741-0373
Fax. (806) 741-1491
ajfpat@nts-online.net

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL…………...........................................i

TABLE OF CONTENTS…………………………………………………….…ii

INDEX OF AUTHORITIES………………………………………………...iii-iv

APPELLANT'S STATEMENT OF THE CASE………………………………...1-2

ISSUE PRESENTED…………………………………………………………….2

BRIEF ANSWER…………………………………………………………….…..2

STATEMENT OF FACTS………………………………………………………….3-6

SUMMARY OF ARGUMENT……………………………………………………….6

ARGUMENTS…………………………………………………………………7-16

CONCLUSION……………………………………………………………...16

PRAYER……………………………………………………………………16-17

SUBMITTAL……………………………………………………………………..17

CERTIFICATE OF SERVICE……………………………………………………18

CERTIFICATE OF COMPLIANCE…………………………………………..18

APPENDIX……………………………………………………………….**TAB A-E**
   1. *Clanin v. Clanin,* 918 S.W.2d 673 (Tex. App. – Fort Worth 2013, no pet)

# INDEX OF AUTHORITIES

## CASES

*Aland v. Martin,*
    271 S.W.3d 424 (Tex. App. – Dallas 2013)………………………….…..7

*BMC Software Belg., N.V. v. Marchand,*
    83 S.W.3d 789 (Tex. 2002)…………………………………………..7-8

*Burnaman v. Heaton*,
    240 S.W.2d 288 (Tex. 1951)…………………………….……14

*Buxani v. Nussbam,*
    940 S.W.2d 350, 352 (Tex. App. – San Antonio 1997, no writ)……………9

*City of Keller v. Wilson,*
    168 S.W.3d 802, 807 (Tex. 2005)…………………………………………..8

*Clanin v. Clanin,*
    918 S.W.2d 673 (Tex. App. – Fort Worth 2013, no pet.)………………14-15

*Ford Motor Co. v. Castillo,*
    279 S.W. 656 (Tex. 2009)…………………………………………………14

*General Metal Fabricating Corp. v. Stergiou,*
    No. 01-11-00460-CV, 2013 WL 522849 (Tex. App. Houston [1st Dist] 2013,
    no pet.)……………………………………………………………….…9

*Marathon Corp. v. Pitzner,*
    106 S.W. 3d 724 (Tex. 2003)……………………………………….…8

*McCalla v Baker's Campground Inc.,*
    416 S.W.3d 416 (Tex. 2013)…………………………………………...9

*Padilla v. LaFrance*,
    907 S.W.2d 454 (Tex. 1995)………………………………………..9,14

*Pulley v. Milberger,*
      198 S.W.3d 418 (Tex. App. – Dallas 2006, pet. denied)……………………7

*Roberson v. Robinson,*
      768 S.W.2d 280 (Tex. 1989)…………………………………………………...8

*Samples Exterminators v. Samples,*
      640 S.W.2d 873 (Tex. 1982)…………………………………………………14

*Six RMA Partners v. Sibley,*
      111 3.W.3d 46 (Tex. 2003)…………………………………………………..7-8

*T.O Stanley Boot Co., Inc. v. Bank of El Paso,*
      847 S.W.2d 218 (Tex. 1992)………………………………………………...9

*Worford v. Stamper,*
      801 S.W.2d 108 (Tex. 1990)…………………………………………………7-8

RULES OF PROCEDURE

TEX. R. APP. P. 11……………………………………………………...1-2, 4-6, 9-10, 14-16

TO THE HONORABLE COURT OF APPEALS:

**I.**

APPELLANT'S STATEMENT OF THE CASE

This case involves a family dispute over the rights to moneys and to real property. The Appellant was the original plaintiff and counter defendant. The Appellee was the original defendant and counter plaintiff. Plaintiff's Original Petition alleged breach of fiduciary duty, fraud and conspiracy, conversion, and theft liability; and requested the trial court establish a constructive trust and issue a temporary restraining order; all in regards to Appellee's withdrawal of the Appellant's life savings totaling around $103,000.00. **TAB D.** The trial court then ordered a Temporary Injunction Hearing on November 8th, 2013. CR 7-10. Defendant's Original Answer generally denied the plaintiff's original petition. CR 11-13. Defendant's Original Counter Claim sought declaratory relief regarding the Appellant's capacity and Eileen Aiken's influence on the Appellant. **TAB E.**

At the November 8th, 2013, hearing, the parties agreed to settle their disputes pursuant to Tex. R. Civ. Proc. R. 11 before Eileen Aiken expressly disagreed with the terms expressed at the hearing (hereinafter referred to as "Agreement") (Tex. R. Civ. P. 11 hereinafter referred to as "Rule 11"). On November 15th, 2013, the Appellant, Jane Durham, withdrew her consent to the

Agreement. After back-and-forth disputes adherence to the Agreement, on April 16th, 2014, the trial court held a bench trial. RR. Vol.004. On June 27, 2014, the trial court issued a final judgment, finding that the Agreement was an enforceable judgment, made pursuant to Rule 11, of the trial court. CR 241-45.

## II.

### ISSUES PRESENTED

**Issue 1.**     Was there legally sufficient evidence for the trial court to find that the Agreement was a valid Rule 11 agreement and an enforceable judgment of the trial court?

## III.

### BRIEF ANSWER

No, there was not legally sufficient evidence for the trial court to find the Agreement was an enforceable judgment of the court because (1) Eileen Aiken expressly did not consent to the terms of the Agreement, and therefore, no binding agreement existed between the parties, and (2) the trial court had clear notice of the Appellant's withdrawal of her consent to the Agreement prior to the Agreement being reduced to a judgment of the trial court.

## IV.

### STATEMENT OF FACTS

1. The Appellant, Jane Durham, is a 93 year old woman. CR 27.

2. The Appellant lives with and is cared for full time by her adult daughter, Eileen Aiken, since January, 2013. R. Vol.003 at 22-23.

3. The Appellee's are also the Appellant's adult children, Margaret Durham, Nancy Stewart, David Durham, and Barbara Flourney.

4. Sometime during October, 2013, the Appellant, Jane Durham, purchased a Nissan Murano, in her name, and for her own benefit. The vehicle is titled in Jane Durham's name to this day. R. Vol.003 at 98.

5. During the time of and after the Appellant's purchase of the Nissan Murano, Nancy Stewart and Margret Durham had power of attorney over Jane Durham. R. Vol.004 at 70-74.

6. In response to the moneys spent on the Nissan Murano, Nancy Stewart and Margret Durham, together, withdrew virtually all of the Appellant's life savings totaling around $103,000.00 because they erroneously suspected that Eileen Aiken purchased the vehicle for herself and her benefit. R. Vol.004 at 70-75.

7. On October 15th, 2013, without the Appellant's knowledge or permission, Margret Durham signed and took possession of a cashier's check, made payable to Jane Durham, drawn on Jane Durham's account at Prosperity Bank in Lubbock, Texas, dated October 15th, 2013, in the amount of $100,230.40. Margret Durham kept possession of this check until, at some point, she gave the check to Nancy Stewart. CR 103-104.

8. Also, on October 15th, 2013, without Jane Durham's knowledge or permission, Margret Durham signed, and took possession of a check, made payable to Jane Durham, drawn on Jane Durham's account at American State Bank, in the amount of $2,000.00, and deposited those moneys in a newly created account at Wells Fargo Bank in Lubbock, Texas, in Margret Durham's name. CR 107.

9. On October 17th, 2013, without the Appellant's knowledge or permission, Margret Durham signed, and took possession of a check made payable to Jane Durham, dated October 17th, 2013, drawn on Jane Durham's account at Prosperity Bank in Lubbock, Texas, in the amount of $1,173.57. CR 105-106.

10. On October 22nd, 2013, Jane Durham revoked Margret Durham's and Nancy Stewart's power of attorney. CR 108-111.

12. The moneys composing the Appellant's life savings continued to change hands in ways that are not relevant to this appeal.

13. On October 28th, 2013, the Appellant initiated a temporary injunction hearing through the trial court, in order to cease any further takings of moneys by Nancy Stewart or Margret Durham. CR 7-10.

14. On November 8th, 2013, the parties met for a Rule 11 Agreement to possible settle the case. The Appellant expressed reluctance but finally agreed to the proposed Rule 11 Agreement, as did the Appellees. R. Vol.002.

15. The terms of the proposed November 8th, 2013 Rule 11 Agreement stipulated that (1) the Appellant's assets would be placed in trust for her care and benefit, (2) the Appellant would continue to live with Eileen Aiken, (3) Eileen Aiken would act as the Appellant's full time caretaker, (4) the other adult children would have the right to visit the Appellant, (6) Eileen Aiken would not interfere with the Appellant's other adult children's visitations, and (7) Eileen Aiken would receive $3,600.00 per month in compensation for and to facilitate the full time caretaking of the Appellant. R. Vol.002.

16. On November 8th, 2013, at the hearing where the proposed settlement was offered and after the Appellant and Appellees agreed to the terms, the trial court asked Eileen Aiken if she agreed to the terms of the Agreement. R. Vol.002 at 25. Eileen Aiken expressly stated that she did not agree, "I don't, but I don't know if that makes any difference, but I don't know." *Id.* No further negotiations occurred between the parties.

17. On November 15th, 2013, the Appellant dictated and signed a notarized letter withdrawing her consent to the Agreement. This letter was received and filed by the trial court on the November 15th, 2013. **TAB B.**

18. On April 16th, 2014, the trial court held a bench trial. R. Vol. 004.

19. On June 27, 2014, the trial court issued a final judgment, finding that the Agreement was an enforceable judgment, made pursuant to Rule 11, of the trial court. CR 241-45 and **TAB A**. As a result, nearly all of the Appellant's assets, including all the moneys previously mentioned and several tracts of land, were placed in trust where they remain presently. *Id.*

**V.**

<u>SUMMARY OF ARGUMENTS</u>

The record establishes the exact opposite of the trial court's finding, that a binding agreement existed between the parties that could become the final judgment of the trial court, because (1) Eileen Aiken expressly did not agree to the terms of the Agreement and (2) the trial court had clear notice of the Appellant's withdrawal of the her consent prior to the agreement.

## VI.

## ARGUMENTS

The Appellant argues that the record establishes the exact opposite of the trial court's findings that a binding agreement existed between the parties that could be enforced as a final judgment of the trial court. Primarily, because Eileen Aiken expressly did not agree to the terms of the Agreement and the trial court had clear notice that the Appellant withdrew her consent to the Agreement. In addition, the Appellant argues that no reasonable factfinder could find the Agreement could enforced as a final judgment of the trial court.

## 1. Standard of Review

"Findings of fact in a case tried to the court have the same force and effect as a jury finding." *Aland v. Martin,* 271 S.W.3d 424, 428-29 (Tex. App. – Dallas 2013) (citing *Pulley v. Milberger,* 198 S.W.3d 418, 426 (Tex.App. – Dallas 2006, pet. denied)). "An appellate court reviews a trial court's fact findings by the same standard it uses to review the sufficiency of the evidence to support a jury's findings." *Aland,* 271 at 428. Where, as in this appeal, no findings of facts are requested or filed, the trial court's judgment implies all findings of fact necessary to support it. *See Six RMA Partners v. Sibley,* 111 3.W.3d 46, 52 (Tex. 2003); *BMC Software Belg*., *N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex. 2002); and

*Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). Where, as in this appeal, a reporter's record is filed, the implied findings are not conclusive, and an appellant may challenge them for both legal and factually sufficiency. *See Sibley,* 111 S.W.3d at 52; *BMC Software,* 83 S.W.3d at 795; *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex. 1989).

In a legal sufficiency review, the evidence is viewed in the light most favorable to the finding of the of the trial court, crediting favorable evidence and disregarding contrary evidence unless a reasonable factfinder could not. *Aland,* 271 at 429 (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 807, 822 (Tex. 2005)). However, this Court does not disregard contrary evidence if there is no favorable evidence. *Wilson,* 186 at 811. If no favorable evidence for the challenged finding exists, then the appellant must have provided conclusive evidence showing the opposite of the challenged finding is true. *Id.* at 814.

"This Court will sustain a no evidence point of error when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact." *Marathon Corp. v. Pitzner*, 106 S.W. 3d 724, 727 (Tex. 2003).

2. <u>No Binding Agreement Exists to Be Enforced as a Judgment of the Trial Court</u>

"Contract law governs the settlement of agreements made in open court pursuant to rule 11." *General Metal Fabricating Corp. v. Stergiou,* No. 01-11-00460-CV, 2013 WL 522849 (Tex. App. Houston [1st Dist] 2013, no pet.). In order for a Rule 11 agreement to be enforced as a judgment of the trial court, the agreement must meet the essential elements of a contract, but also allows for oral agreements read into the court's record to be enforced. *See Padilla v. LaFrance,* 907 S.W.2d 454 (Tex. 1995).

"Parties form a binding contract when the following elements are present: (1) an offer, (2) an *acceptance in strict compliance with the terms of the offer*, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent to be mutual and binding." *Buxani v. Nussbam,* 940 S.W.2d 350, 352 (Tex.App. – San Antoio 1997, no writ) (emphasis added). "The material terms of the contract must be agreed upon before a court can enforce the contract. *T.O Stanley Boot Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218 (Tex. 1992). "When an essential or material term of an agreement is left open for future negotiation, there is no binding contract." *Id.* "The material terms of a contract are determined by a case-by-case basis." *McCalla v Baker's Campground Inc.,* 416 S.W.3d 416, 418 (Tex. 2013) (citing *Stanley Boot*, 847 at 221).

a. Eileen Aiken Expressly Did Not Agree to the Terms of The Agreement

Under no jurisdiction of the Common Law could there said to be a binding, legal contract formed between Appellant and Appellee on November 8th, 2013. To put it simply, there is no binding, legal contract agreement because Eileen Aiken expressly did not agree to the terms of the Agreement. Regardless, the trial court entered the Agreement as binding agreement and judgment of the trial court pursuant to Rule 11. Although not an official party to the suit, Eileen Aiken was alleged to engage in possible wrongdoing by the Appellees, was included in the terms of the Agreement, and offered compensation, or consideration, for her performance pursuant to the Agreement. In addition, Eileen Aiken was expressly asked by the trial court whether she agreed to the terms of the Agreement. Given these factors, Eileen Aiken was clearly a party to the Agreement.

As a party to the Agreement, Eileen Aiken must have expressly accepted the Agreement in strict compliance with terms of the offer in order for a binding contract to exist. Eileen Aiken clearly did the exact opposite and rejected the Agreement. When asked by the trial court if she accepted the terms of the Agreement, Eileen Aikeen expressly stated that "I don't, but I don't know if that makes any difference, but I don't no." RR Vol.002 at 25. No other evidence to the contrary exists in the record that Eileen Aiken ever accepted the terms of the Agreement.

Eileen Aiken's rejection of the Agreement destroys one of the most basic and essential elements of any contract under the Common Law, acceptance. However, this does not end how completely Eileen Aiken's rejection destroys the possibility of a binding contract.

b. Terms Including Eileen Aiken Were Material Terms

The terms of the Agreement first stipulated that funds taken by the Appellee would be returned to the Appellant and placed in trust for the benefit of the Appellant, along with the rest of the Appellant's assets. However, the remainder of the Agreement concerned the living arrangements and wellbeing of the Appellant. Those terms included that (1) the Appellant would continue to live with Eileen Aikeen, (2) Eileen Aiken would receive $3,600.00 per month from the trust established by the Agreement for compensation and to facilitate the care of the Appellant, (3) Eileen Aikeen, as the caretaker of the Appellant, would be responsible for spending funds distributed by the agreed trust for the benefit of the Appellant, and (4) Eileen Aiken would not interfere with the visitation of the Appellant's other adult children.

Given the Appellee's allegations of wrongdoing on the part of Eileen Aiken and questioning of whether the Appellant had the capacity to handle her own personal and financial affairs, the terms of the Agreement that included Eileen

Aiken could only be called material terms of an Agreement to settle a dispute over the very same issues.

   c. <u>Material Terms Were Left Open – No Meeting of the Minds Occurred</u>

Regardless of whether this Court holds that Eileen Aiken is a party to the Agreement, the Agreement is still not a binding agreement that could be rendered a final judgment of the trial court. Before Eileen Aiken expressly did not agree to the terms of the Agreement, the Appellant and Appellees had agreed to the terms the Agreement. Once Eileen Aiken expressly did not agree to the terms of the Agreement, no further negotiations between the parties occurred. If this Court were to hold that the terms including Eileen Aiken were material terms of the Agreement, then material terms of the contract were left open and no binding contract was formed because the parties did not contemplate the terms of the Agreement without Eileen Aiken's inclusion.

To state the same concept differently, but to also tie in other essential elements of a contract, no meeting of the minds occurred in which the parties contemplated the terms of the contract without Eileen Aiken's inclusion. The Appellant and Appellees negotiated and agreed to terms that would all be facilitated in one way or another by Eileen Aiken. Even the terms of what assets were to be placed in trust included Eileen Aiken because as caretaker to the Appellant, Eileen Aiken would be the one to facilitate the distributions of those

assets. Once Eileen Aiken expressly did not agree to the terms of the Agreement, this essentially put the parties back into negotiations. The record clearly shows that the parties never contemplated or agreed to the terms of the Agreement without the inclusion of Eileen Aiken and her performance. Given that the terms including Eileen Aiken were material terms, this Court should hold that the Appellant conclusively establishes that no binding contract was ever formed between the Appellant and Appellee that could be rendered a final judgment of the trial court.

d. Conclusions

The record clearly demonstrates that the Appellant, the Appellee, and Eileen Aiken all did not accept the terms of the Agreement in strict compliance with the offer because Eileen Aiken expressly did not consent and the Appellant and Appellee never agreed to the terms of the Agreement without Eileen Aiken's inclusion. Given the incapacity of the Appellant to care for her own personal and financial affairs and the possible wrongdoing of Eileen Aiken were alleged by the Appellee's, the terms including Eileen Aiken must be considered material for the purposes of an agreement to settle the dispute between the parties. In addition, there was no meeting of the minds and mutual assent to terms of the Agreement that did not include Eileen Aiken on the part of the Appellant and Appellee. For the aforementioned arguments, this Court should hold there was no legally sufficient evidence for the trial court to find that the Agreement was a sufficient

Rule 11 agreement and the trial court could not render the Agreement as a final judgment of the trial court.

2. The Appellant's Withdrawal of Consent to the Agreement

Where a party no longer consents, after notice and a hearing complying with Rule 11, any judgment is no longer an agreed judgment, but rather a judgment enforcing a binding contract. *Padilla,* 907 at 461. "When consent is withdrawn…the agreed judgment that was part of the settlement may not be entered." *Ford Motor Co. v. Castillo,* 279 S.W. 656, 663 (Tex. 2009) (citing *Padilla,* 907 at 462). Instead, "[t]he party seeking enforcement of the settlement agreement must pursue a separate claim for breach of contract." *Id.*

"When a trial court has knowledge that one of the parties to a suit does not consent to a judgment, agreed to by [her] attorney, the trial court should *refuse to give the agreement the sanction of the court* so as to make it a judgment of the court." *Burnaman v. Heaton*, 240 S.W.2d 288, 291 (Tex. 1951) (stating in context of a Rule 11 agreement, all parties must agree) (emphasis added). "A party may revoke [her] consent to settle a case any time before the judgment is rendered." *Clanin v. Clanin,* 918 S.W.2d 673, 677 (Tex. App. – Fort Worth 2013, no pet.) (citing *Samples Exterminators v. Samples,* 640 S.W.2d 873, 874-75 (Tex. 1982)).

In *Clanin*, the Appellant attempted to argue that he had withdrawn consent to an agreed divorce settlement made pursuant to Rule 11 by objecting to a motion for judgment. *Clanin,* 918 at 677. The court in *Clanin* observed the appellant had not made in known and to the trial court that he had withdrawn consent to the agreement by objecting to the motion for judgment. *Id.* In addition, the court in *Clanin* held that the Appellant was too late by raising his dissatisfaction with the agreed judgment in a motion for new trial. *Id.* In *Clanin,* the court held there "was sufficient evidence to support the existence of a valid Rule 11 agreement and the appellant had not revoked his consent to the agreement prior to the rendition of court's judgment." *Id.*

In clear contrast to *Clanin,* the Appellant wrote an express statement to the trial court that she was withdrawing her consent to the Agreement. **TAB B.** The Appellant's express statement was signed, notarized, and received and filed stamped by the trial court before rendition of the judgment. **TAB B.** Unlike *Clanin*, the trial court had clear notice that the Appellant had withdrawn her consent to the Agreement before the agreement was rendered a final judgment of the trial court. Because the record demonstrates clear and conclusive evidence that the Appellant had withdrawn her consent to the Agreement, this Court should hold that there was legally insufficient evidence to find that a valid Rule 11 agreement existed that could be rendered the final judgment of the trial court.

Just as with whether an agreement existed at all between the parties, there conclusive evidence found in the record demonstrates the exact opposite of the trial court's finding. The only evidence in the record conclusively demonstrates that the Appellant had withdrawn her consent to the Agreement prior to the rendition of a the trial court's judgment. Therefore, this Court should hold that the trial court had legally insufficient evidence to find that it could render the Agreement as a final judgment of the trial court.

## VII.

CONCLUSION

Given that Eileen Aiken expressly disagreed with the terms of the Agreement and that the trial court received clear notice of the Appellant's withdrawal of consent to the Agreement, this Court should hold that there legally insufficient evidence to find that there was a valid Agreement pursuant to Rule 11 which could rendered a final judgment of the trial court.

## VIII.

PRAYER

Appellant prays that this Court find that the trial court did not have legally sufficient evidence to find that the Agreement was a valid Rule 11 agreement or

that the Agreement could be rendered as a judgment of the trial court. Moreover, the Appellant prays that this Court reverse and remand the trial court's judgment, releasing all of the Appellants funds to the Appellant from the trust established by the Agreement and the trial court's final judgment. Furthermore, the Appellant prays for the recovery of all her costs and for such other and further declarations as may be necessary and appropriate to resolve the issues raised in this appeal

Appellant asks this court for such other and further relief to which the Appellant may prove herself entitled in law or in equity.

Respectfully submitted,

**Michael Sales**

Texas Bar No. 17532060
1601 Broadway
Lubbock, TX 79401
Tel. (806) 763-9493
Fax. (806) 744-5411

/s/ Michael Sales
ATTORNEY FOR APPELLANT
Sales5Ralls@aol.com

## CERTIFICATE OF SERVICE

I herby certify that a true and correct copy of the foregoing Appellant's Brief has been served via e-service and or by email on this the 29th day of December, 2014 on Aubrey Fouts, attorney for the Appellee.

/s/ Michael Sales
**Michael Sales**

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the typeface requirements of Tex. R. App. P 9.4(e) because it has been prepared in conventional typeface no smaller than 14-point for text. This document also complies with word count limitations of Tex. R. App P. 9.4(i), if applicable because it contains less than 15,000 words, excluding any parts exempted by Tex. R. App P 94(i)(1).

/s/ Michael Sales_____
**Michael Sales**

| | | |
|---|---|---|
| JANE T. DURHAM<br>Plaintiff, | §<br>§<br>§ | IN THE 237th DISTRICT COURT |
| V. | §<br>§<br>§ | OF |
| MARGARET L. DURHAM, NANCY C.<br>STEWART, DAVID DURHAM, AND<br>BARBARA FLOURNOY<br>Defendants. | §<br>§<br>§<br>§<br>§ | LUBBOCK COUNTY, TEXAS |



## JUDGMENT

On April 16, 2014, the Court heard this case.

*Appearances*

The Plaintiff and Counter-Defendant, Jane T. Durham, a/k/a Jane Tuttle Durham, did not appear in person, although duly notified of the setting of this case on final hearing, but Plaintiff appeared through her attorney of record, Michael Sales.

The Counter-Defendant, Eileen Anne Aiken, a/k/a Eileen Anne Durham Aiken, did not appear in person, although duly notified of the setting of this case for final hearing, but appeared through her attorney of record, Michael Sales.

The Defendants and Counter-Plaintiffs, Margaret L. Durham, Nancy C. Stewart, and Barbara Flournoy, appeared in person and through their attorney of record, Aubrey J. Fouts, and announced ready for trial.

The Counter-Plaintiff, David Durham, did not appear in person, but appeared through his attorney of record, Aubrey J. Fouts.

*Motion for Continuance*

The Plaintiff, Jane T. Durham, and Counter-Defendants, Jane T. Durham and Eileen

1



Aiken, through their attorney of record, Michael Sales, presented an oral Motion for Continuance, and the Court, after hearing the argument of counsel, denied the Motion for Continuance.

*Jurisdiction*

The Court finds it has jurisdiction of this proceeding and of all parties in this proceeding.

*Findings*

The Court, after hearing the evidence and argument of counsel, finds that an agreement entered into by the Counter-Plaintiffs and Jane T. Durham, in connection with a hearing on November 8, 2013, which was dictated into the record and approved by the parties and the Court, qualifies as an enforceable agreement pursuant to Rule 11 of the Texas Rules of Civil Procedure, and is enforceable by specific performance, as to the provisions of such agreement related to the creation of a trust to hold and manage certain assets of the Plaintiff, Jane T. Durham.

The Court further finds that the provisions of the agreement of November 8, 2013 related to visitation and access of Counter-Plaintiffs as family members with Jane T. Durham is unenforceable, as a matter of law, and that the relief requested by the Counter-Plaintiffs, related to those provisions of the agreement, is denied.

The Court finds that the motion of the Counter-Plaintiffs to file a Trial Amendment and seek additional relief, filed on April 16, 2014, should be denied, and that all costs of court and attorney's fees incurred by the parties should be borne by the parties incurring such costs.

*Judgment*

IT IS, ACCORDINGLY, ORDERED, ADJUDGED, and DECREED that the Rule 11 Agreement entered into between the parties as recited above on November 8, 2013 is ordered specifically enforced to the extent that the agreement provides for the creation of a trust for the

2

benefit of Jane T. Durham, and IT IS ORDERED that such trust shall include the following provisions, as well as other appropriate provisions necessary to effectuate such trust, to wit:

A.    The name of the trust shall be "The Jane T. Durham Trust".

B.    The Trustee of the trust shall be a bank or other financial institution having trust power, selected by mutual agreement of the parties, and in the absence of mutual agreement, the Court, on motion of any party, shall appoint the Trustee.

C.    The original corpus of the trust shall be the funds held in the trust account of Michael Sales, pursuant to prior orders of the Court, attorney for the Plaintiff, Jane. T. Durham, together with the following real property located in Hockley County, Texas, to wit:

Tract One

The NW/4 of Section 26, Block A, R.M. Thompson Survey in Hockley County, Texas.

Tract Two

The S/2 of Section 26, Block A, R.M. Thompson Survey in Hockley County, Texas, SAVE AND EXCEPT the tract conveyed to Clifford O. Whitley in Volume 449, Page 119 of the Deed Records of Hockley County, Texas, and SAVE AND EXCEPT the tract of land conveyed to Bill Brown and Mack Brown in Volume 461, Page 463 of the Deed Records of Hockley County, Texas.

Tract Three

The SW/4 of Section 19, Block A, R.M. Thompson Survey in Hockley County, Texas, SAVE AND EXCEPT the tract of land conveyed to Charles C. Quisenberry in Volume 500, Page 398 of the Official Public Records of Hockley County, Texas, SAVE AND EXCEPT a tract of land conveyed to Winston Brown in Volume 501, Page 772, and corrected in Volume 525, Page 135 of the Official Public Records of Hockley County, Texas. The conveyance shall

3

be subject to all mineral reservations and conveyances of record in Hockley County, Texas, and any leases or easements of record in Hockley County, Texas.

D. The trust shall provide for reasonable fee compensation be paid to Eileen Aiken to provide care for Jane T. Durham, as long as Jane T. Durham and Eileen Aiken agree that Eileen Aiken shall provide such care, with such compensation to Eileen Aiken initially being $3,600.00 per month, and the Trustee shall further distribute amounts determined by the Trustee to be necessary and reasonable for the health, support, and maintenance of Jane T. Durham, above the amount paid to Eileen Aiken, and after the application of sources of income of Jane T. Durham independent of the trust, including Teacher Retirement benefits and Social Security payments, which are not to be included in the assets of the trust.

E. The trust shall be in the form and substance approved by the Court, upon motion after hearing.

F. The Trustee shall provide quarterly reports reflecting the assets, income, and expenses related to the trust to Jane T. Durham, Beneficiary, and Margaret L. Durham, Nancy C. Stewart, David Durham, and Barbara Flournoy, through their attorney as designated by Margaret L. Durham, representative of Counter-Plaintiff.

G. In the event that the parties are unable to agree on a Trustee to serve as Trustee of the trust, upon motion and after hearing, the Court shall designate the Trustee.

IT IS ORDERED that Jane T. Durham, Eileen Aiken, and the Counter-Plaintiffs in this case shall cooperate in the execution of all documents, including the Trust Agreement and conveyances of assets into the trust, which may be required to effectuate the trust ordered herein.

IT IS ORDERED that all parties in this proceeding are restrained and enjoined from, and ordered to perform, the following acts to facilitate the creation and effectuation of the trust

4

ordered to be executed by specific performance, to wit:

A.    All parties and their attorneys are restrained and enjoined from taking any action or executing any documents calculated to interfere with the execution or effectuation of the trust ordered in this judgment; and

B.    All parties whose signatures are required to execute the trust ordered to be created in this judgment, or any documents necessary to transfer assets into the trust, are ordered to execute the trust document and such transfer documents within 10 days of the approval of the form and substance of the trust by the Court.

IT IS ORDERED that all attorney's fees and costs of court incurred in this proceeding are to be borne by the party incurring such costs or attorney's fees.

All relief requested in this proceeding and not granted is denied.

This judgment is intended to be a final judgment, subject to appeal.

SIGNED on ~~May~~ _June_ _27_, 2014.

_____
JUDGE PRESIDING

5



01900193674093
FINL - FINAL
Case No: 2013-509,100

*Judge Hatch*

**Regarding cause no. 2013-509,100**
**Jane Durham vs. Margaret L. Durham and Nancy C. Stewart**

On Friday, November 8th, 2013, I attended a hearing regarding my case. For approximately two hours, I was forced to wait in the courtroom in my wheelchair while my lawyer and others went to other rooms and discussed the case. Finally, it was time for my case. After some discussion in the courtroom, I was taken to another room. Following the lead of my attorney, whom I trusted at this point, I was asked to sign some papers. When I came back into the courtroom, the judge was asking me about placing my assets into a trust. I told him I needed more time to think about that. At that point, my attorney then took me to another room to try to persuade me to agree to the trust. Upon returning to the courtroom, I was asked by the judge if I was agreeable to the trust and the settlement. I said, "No, not really". At that point, my lawyer tried to convince me that I should agree. By this time, I was so tired and fatigued that I just wanted to go home. So, I finally gave in and said okay. I had trusted my lawyer, but that was my big mistake.

I want to try to repeal, rescind, revoke, annul, et al all of the documentation that was signed at that hearing.

I do **NOT** want to put my assets into a trust. **That is my right.**

I do **NOT** want to be forced to send my bank statements to anyone other than myself. **That is my right.**

I do **NOT** want to be forced or mandated to have contact with anyone, family or otherwise, unless I so desire. **That is my right.**

I do **NOT** want anyone else, family or otherwise, to interfere with my living arrangements. **That is my right.**

**I want to be allowed to control my life myself, including my finances. That is my right.**

I feel that I was betrayed and unduly influenced by my attorney, and that I was asked to make important decisions under duress, and while I was physically and emotionally exhausted. Instead of representing me and my interests, my lawyer suddenly switched sides, and began representing the interests of the opposition.

I feel very sad that the children I trusted took my money without my permission, and are now putting me through this terrible ordeal.

Since the hearing, I have been trying to attain my case file in order to seek other legal counsel and try to remedy the situation. The following notes will document my efforts.

On Monday, November 11, 2013, I requested my case file, case notes, and anything else relevant to my case from my attorney at that time, Molly Manning. Ms. Manning refused to make



EXHIBIT
B

MHB*00726

my file available for me. Over the next few days, I sent repeated requests for my file, to no avail. On Wednesday morning, November 13, 2013, I notified Ms. Manning that her services would no longer be required, and asked again for my file to be ready for pickup. After further refusals from Ms. Manning, I sent a signed and notarized copy of a letter via e-mail, reiterating the prior termination of her services, and once again requesting that my file be ready for me to pick up by 10:00 am the following morning. Once again, she refused, stating that the file would not be available until 4:45 pm on Thursday evening, November 14, 2013. I was not able to pick the file up at that time. I have since received an e-mail from Ms. Manning stating that now I will not be allowed to pick up my file until sometime next week. All of this unnecessary delay and holding my file from me has made it impossible for me to seek other legal counsel, and possibly caused me to miss important deadlines related to my case.

*Jane Durham*

Sworn to before me this 15th day of November 2013.

*Peggy A Sullivan*





PEGGY A SULLIVAN
Notary Public, State of Texas
My Commission Expires
OCTOBER 22, 2017

MHB*00727

CAUSE NO. 2013 509100

JANE T. DURHAM,

v.

MARGARET L. DURHAM and
NANCY C. STEWART

§
§
§
§
§
§
§
§

IN THE 237ᵗʰ DISTRICT COURT

OF

LUBBOCK COUNTY, TEXAS

### AFFIDAVIT OF JANE T. DURHAM

STATE OF TEXAS

COUNTY OF LUBBOCK

Before me, the undersigned authority, on this day personally appeared Jane T Durham, being duly sworn by me, upon oath deposed and said:

1.      "My name is Jane T. Durham, and I am a resident of the City of Lubbock, Lubbock County, Texas, am over 21 years of age and of sound mind, and I have never been convicted of a criminal offense.

2.      I am the owner of over $103,000.00 that on or about October 21, 2013, I learned had been removed from my checking and savings accounts at Prosperity Bank in Lubbock, Texas, without my knowledge or permission, by Defendants as follows:

a.      A Cashier's Check dated October 15, 2013, for $100,230.40 obtained by Margaret Durham, made payable to Jane Durham and taken by Margaret Durham and apparently sent to Nancy Stewart;

b.      A Cashier's Check dated October 17, 2013, for $1,173.57 obtained by Margaret Durham, made payable to Jane Durham and taken by Margaret Durham; and

c.      A check written on Jane Durham's account to Jane Durham, signed by Margaret Durham and deposited by Margaret Durham. *See Exhibit A-1.*

3.      Upon learning this I immediately, on October 21, 2013, revoked any Power of Attorney that might have been given to Margaret Durham and Nancy Stewart, *see Exhibit A-2,* Due to a typographical error on the October 21, 2013, I again executed a Revocation of Power of Attorney on October 22, 2013, *see Exhibit A-3,* and sent the revocation to each of them via email and also via overnight delivery on October 22, 2013. *See Exhibit A-4.*

4.      I have since learned that on October 15, 2013, Margaret Durham deposited the personal check for $2,000.00, and on October 21, 2013, Margaret Durham deposited the Cashier's Check in the amount of $1,173.57, both of which were made payable to me, into a savings and checking account at Wells Fargo Bank that she opened under the name Jane

Affidavit of Jane T. Durham
Page 1

EXHIBIT
C

MHB*00297

Durham, Margaret Durham POA. *See Exhibits A-5.* Following this on October 23, 2013, Margaret Durham wrote a check in the amount of $3,000.00 to CASH on the Wells Fargo account she had created in my name and took the $3,000.00 in cash leaving just over $172.00 in the accounts that she had created just a few days earlier.

5.   I have also recently learned that Margaret Durham had changed the address for the title for a vehicle that I had recently purchased to her address.

6.   I have also since learned, on October 25, 2013, that the Cashier's Check in the amount of $100,230.40 that was made payable to me and taken by Margaret was apparently sent to Nancy Stewart by Margaret as it was deposited by Nancy Stewart, without my knowledge or permission, into newly created checking and savings accounts in the name of Jane Durham, Nancy Stewart POA, at Canandaigua National Bank in New York and that after that on October 23, 2013 Nancy Stewart had issued checks or withdrew funds on those accounts as follows:

a.   check for $10,000.00 payable to Nancy Stewart;

b.   check for $25,000.00 payable to Sara Turbush, daughter of Nancy Stewart;

c.   check for $60,230.48 payable to Jane Durham and taken by Nancy Stewart; and

d.   cash withdraw of $4,950.00 taken by Nancy Stewart.

7.   After learning this and that the subject checks listed above had not cleared Canandaigua National Bank, I immediately advised them that the power of attorney of Nancy Stewart had been revoked on October 21, 2013, and instructed them to stop payment on the checks. I then had faxed to them the same in writing along with a copy of the revocation of the power of attorney. *See Exhibit A-6.* I followed this up with a formal stop payment document, *see Exhibit A-7*, but to date I have received no confirmation from Canandaigua National Bank that they have in fact stopped payments on these checks, as they had not yet cleared. In fact, on information and belief, the discussion that there representative had with my attorney late on Friday indicated that they may not be attempting to stop payment as I had requested and that despite the fact that I was the named account holder and any power of attorney of Nancy Stewart had been revoked they had after I instructed the same and provided the revocation of the power of attorney contacted Nancy Stewart regarding this matter, which certainly was against my wishes.

7.   I have also learned from Texas Retirement System that Margaret Durham contacted them and changed the direct deposit for my monthly retirement payments to the newly created Wells Fargo account, without my permission or consent. This is very concerning to me as I rely on my retirement funds for support.

8.   On October 23, 2013, in order to attempt to regain the funds that had been taken from me without having to file a lawsuit against my daughters, I had my attorney send a letter to them demanding that they return my funds to me by Friday, October 25, 2013 at 9:00 a.m. and included with that letter was another copy of the revocations of power of attorney. This letter

Affidavit of Jane T. Durham
Page 2

MHB*00298

was sent via email, hand delivery and overnight delivery to Margaret and Nancy. *See Exhibit A-8.* My funds were not returned and no contact was made by Margaret or Nancy with either me or my attorney.

9. Also, during the time that Margaret Durham and Nancy Stewart had Power of Attorney for me, Margaret would get my mail from my Post Office box and go through it and only give me what she felt I needed to have. She would not provide me with my bank statements or other relevant information regarding my finances or farms, etc.

10. I own farms in Hockley County, Texas that I have just recently been informed by Hockley County FSA office were not signed up for farm programs in 2013, because no one signed and returned the paperwork for the same. As I understand it from FSA, because the required paperwork was not provided my farms failed to be signed up for farm programs in the past year which means that I lost valuable benefits/income from my farms. Apparently, Margaret did not provide me with the information that had been mailed regarding this.

11. I have been residing on property belonging to another daughter, Eileen Aiken, and on Friday afternoon, October 25, 2013, we received a notice from the City that someone had called and reported the weeds needed to be cut, this was despite the fact that there are similar weeds in the neighborhood and that no such notice had been received in the past. I strongly expect that this is due to the actions of Margaret Durham and/or Nancy Stewart in their effort to harassment and seek to intimidate me.

12. Further, in 2012, Nancy Stewart came and took me from the place I was residing in Lufkin, Texas and brought me to a living facility in Lubbock, without consulting or notifying my other daughter who lives in Lufkin and was assisting me there. I was not happy in the living facility that I was brought to in Lubbock and Nancy and Margaret agreed that I was not being well cared for so it was decided that I would go and reside at the property of my daughter Eileen Aiken, which I have been doing since approximately March of 2013.

13. I am very happy residing at the property owned by my daughter, and my daughter Eileen is assisting me with my needs and with driving me around etc., however, I am allowed to direct my personal and now my financial affairs. I am doing better then I have been in years. I want very much to continue to reside there and I also want to make my own decisions regarding my personal affairs and finances.

14. Based on their prior actions and the fact that neighbors have reported strange cars in the area driving very slowly by my daughter Eileen's property, I am very fearful that Margaret Durham and/or Nancy Stewart will seek to force me to change my living arrangements and or try to keep me from having control over my personal and financial affairs. As I am in a wheelchair, I am very concerned that Margaret Durham and/or Nancy Stewart will show up unannounced and seek to cause me to relocate against my will, which I do not want to do.

15. I love all of my children, but I am very angry with Margaret and Nancy for the way that they have treated me and because they have taken funds that belong to me and refuse to return them.

Affidavit of Jane T. Durham
Page 3

MHB*00299

FURTHER AFFIANT SAITH NOT.



Jane T. Durham

SUBSCRIBED AND SWORN to before me this 28th day of October, 2013.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

Seal:

DAWN MAMAWAL
My Commission Expires
February 22, 2015

Affidavit of Jane T. Durham
Page 4

CAUSE NO. 2013 509 100

| | | |
|---|---|---|
| JANE T. DURHAM, | § | IN THE 237 DISTRICT COURT |
| | § | |
| v. | § | OF |
| | § | |
| MARGARET L. DURHAM and | § | |
| NANCY C. STEWART | § | LUBBOCK COUNTY, TEXAS |

### PLAINTIFF's VERIFIED ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

NOW COMES Plaintiff, Jane Durham ("Plaintiff"), and files this Original Petition and Application for Temporary Restraining Order and Temporary Injunction, and for good cause shows this Court the following:

#### A. DISCOVERY LEVEL

1. Plaintiff pleads that discovery in this matter should be conducted in accordance with Rule of Civil Procedure 190.3 (Level 2).

#### B. RELIEF

2. Plaintiff seeks relief of over $100,000.00 but not more than $200,000, at this time. Plaintiff reserves the right to amend.

#### C. PARTIES

2. Plaintiff, Jane T. Durham is an individual residing in Lubbock, Lubbock County, Texas. The last four digits of her Texas ID are #6089.

3. Margaret Durham, Defendant, is a resident of Lubbock, Lubbock County, Texas, and may be served at 3108 33rd Street, Lubbock, Texas 79410 or wherever she may be found.

4. Nancy Stewart, Defendant, is a resident of Ontario County, New York and can be served at 6824 Gillis Road, Victor, New York, 14564, Ontario County, New York, or where she may be found.

Plaintiff's Original Petition
Page 1 of 16



EXHIBIT D

## D. JURISDICTION AND VENUE

5.      This Court has jurisdiction over this controversy because the damages are within the jurisdictional limits of the Court.

6.      Venue is proper in Lubbock County, Texas, because all or a substantial part of the events or omissions giving rise to the claims occurred and/or originated in Lubbock County, Texas, and at least one of the Defendants is a resident of Lubbock County, Texas and Plaintiff is a resident of Lubbock County, Texas.

## E. FACTS AND BACKGROUND

7.      Defendants Margaret Durham and Nancy Stewart are two of the daughters of Plaintiff Jane Durham.  At one time Margaret Durham and Nancy Stewart had been given power of attorney for Jane Durham.

8.      On October 15, 2013, without Plaintiff's knowledge or permission and against Plaintiff's wishes, over $103,000.00 was removed from Plaintiff's bank accounts at Prosperity Bank, Lubbock, Texas by Defendants, through use of a power of attorney, via the following:

   a. A Cashier's Check, dated October 15, 2013, for $100,230.00 obtained by Margaret Durham, made payable to Jane Durham and taken by Margaret Durham and apparently sent to Nancy Stewart;

   b. A Cashier's Check, dated October 17, 2013, for $1,173.57 obtained by Margaret Durham, made payable to Jane Durham and taken by Margaret Durham;

   c. A check, dated October 15, 2013, for $2,000.00 written by Margaret Durham on the account of Jane Durham and made payable to Jane Durham, signed by Margaret Durham and deposited by Margaret Durham into a newly created bank account at Wells Fargo, as more specifically outlined below.  See ExhibitA, A-1.

MHB*00282

Following these actions the Prosperity checking and savings accounts of Jane Durham were closed by Margaret Durham. Also around this time Plaintiff learned that Margaret Durham had attempted to change the address where the title for a vehicle that Plaintiff had purchased was to be sent to Margaret's address. See Exhibit A.

9. Upon learning of these actions Jane Durham revoked any and all powers of attorney any one had for her on October 21, 2013, and delivered the revocation to Defendant's via overnight delivery. See Exhibits A, A-2, A-3, A-4.

10. The above-described check in the amount of $2,000.00 that was made payable to Jane Durham was deposited by Margaret Durham into a newly created checking and savings account in the name of Jane Durham with Margaret Durham as POA at Wells Fargo Bank on October 15, 2013. See Exhibit A, A-1, A-5. The Cashier's Check in the amount of $1,173.57 that was made payable to Jane Durham taken by Margaret Durham was deposited into the newly created Wells Fargo checking account on October 21, 2013, by Margaret Durham[1]. See Exhibits A, A-1, A-5.

11. Also on October 21, 2013, Margaret Durham attempted to direct the automatic deposit of Plaintiff's monthly teacher retirement payment to the newly created Wells Fargo checking account. See Exhibit A, A-5. This monthly teacher retirement payment being the primary source from which Plaintiff supports herself.

12. On October 23, 2013, Margaret Durham wrote a temporary check in the amount of $3,000.00 on the newly created Wells Fargo checking account to Cash and Margaret Durham

---

[1] The power of attorney that Margaret Durham and Nancy Stewart held was revoked on October 21, 2013 and again by subsequent Revocation on October 22, 2013, and delivered to Defendants via email from Plaintiff as well as overnight delivery to the residences of Defendants and then again with the demand letter from Plaintiff's counsel to Defendants via email and hand delivery and overnight delivery on October 23, 2013. See Exhibit A, A-8.

Plaintiff's Original Petition
Page 3 of 16

MHB*00283

took the cash, leaving only a little over one hundred dollars in these newly created accounts. See Exhibit A, A-5.

13.     On October 23, 2013, in order to seek to avoid having to bring suit against her own daughters for the theft of her funds, Jane Durham had counsel forward a letter, via email to both, hand delivery to Margaret Durham and overnight delivery to Nancy Stewart again providing them with a copy of the revocation of the power of attorney by Jane Durham and providing them with written notice that Jane Durham was demanding the return of her funds that had been wrongfully taken from her and giving them until 9:00 a.m. on Friday October 25, 2013, to return the subject funds. See Exhibit A, A-8.

14.     On Friday, October 25, 2013, Jane Durham learned that on October 22, 2013[2], Nancy Stewart had taken the Cashier's Check in the amount of $100,230.00 and deposited it into newly created checking and savings accounts at Canandaigua National Bank, in Canandaigua, New York, in the name of Jane Durham, Nancy Stewart POA. Jane Durham immediately contacted Canandaigua National Bank and further learned that despite Plaintiff having delivered to her the revocation of her power of attorney Nancy had on October 23, 2013, had issued checks out of the subject accounts for all but $50.00 of the $100,230.00 funds as follows:

a.      check for $10,000.00 payable to Nancy Stewart;

b.      check for $25,000.00 payable to Sara Turbush, daughter of Nancy Stewart;

c.      check for $60,230.48 payable to Jane Durham and taken by Nancy Stewart; and

d.      a cash withdraw from the accounts of Jane Durham of $4,950.00 taken by Nancy Stewart. See Exhibit A.

---

[2] The revocation of any power of attorney held by Nancy Stewart was sent via email and overnight delivery on October 22, 2013, and again along with the letter demanding the return to Plaintiff or her funds dated October 23, 2013, sent via email and overnight delivery. See Exhibits A2-A4 and A-8.

MHB*00284

15. Upon learning this, and that the subject checks had not yet cleared the bank, Jane Durham immediately instructed Canandaigua National Bank that she had revoked any POA held by Nancy Stewart on October 21, 2013, and immediately faxed them a copy of the same. Further, Jane Durham immediately instructed the bank, both verbally and in writing to immediately stop payment upon these checks that she had been informed had not yet cleared their bank. Jane also faxed a stop payment order to them again instructing they immediately stop payment. See Exhibits A, A-6, A-7.

16. At the end of the day on Friday, October 25, 2013, the legal department for Canandaigua National Bank contacted counsel for Jane Durham and informed them that, the bank had been in contact with Nancy Stewart, this was despite the fact that Nancy Stewart was not on the account and their contacting of her was in violation of their obligations to the account holder Jane Durham and the fact that the bank had received the verbal and written revocation of the power of attorney for Nancy Stewart. The bank said they were looking into the issue but it is unclear that the bank is carrying out the instructions given to them by Jane Durham to stop the distribution of her funds through stopping payment on the subject checks that had not yet cleared the bank. See Exhibits A, A-6, A-7.

17. Additionally, in the past Defendants have come and physically taken Plaintiff from a prior living location in East Texas, and Plaintiff, who is in a wheelchair, is fearful that despite having revoked any POA Defendants might have held in the past that Defendants will seek to come and take her to another living location or otherwise transport her without her permission or consent which she does not want to occur.

18. Due to the actions of her daughters Margaret Durham and Nancy Stewart, Jane Durham is left with no alternative other than to proceed with this suit in order to recover her life

MHB*00285

savings funds of over $103,000.00 that have been taken from her by Defendants and to seek to protect herself from them attempting to make her move or relocate against her will or to otherwise harass or intimidate Plaintiff.

## F. BREACH OF FIDUCIARY DUTY

19.     Plaintiff incorporates the foregoing paragraphs in support for her claim of breach of fiduciary duty.

20.     Defendants both had a fiduciary duty to Plaintiff.

21.     Defendants breached their fiduciary duties to Plaintiff by their misuse of their power of attorney to gain access and control to the funds of Plaintiff which they have taken personal possession and control over and/or distributed or attempted to distributed to themselves or their child, against the wishes of Plaintiff and in disregard of their obligations to Plaintiff and in spite of the fact that they have been made aware that Plaintiff revoked their power of attorney.

    a.  Defendants breached their fiduciary obligations by taking over $103,000.00 from the accounts of Plaintiff; and without Plaintiff's knowledge or permission distributing or attempting to distribute the same to themselves or their child, and refusing to return the funds to Plaintiff, despite Plaintiff having given them notice of the revocation of their POA and demanding the return of her funds;

    b.  Defendant's actions have benefited Defendants in that Defendants have taken for themselves or their child over $103,000.00 in funds belonging to Plaintiff.

    c.  Defendant's actions have caused injury to Plaintiff in that they have removed over $103,000.00 of funds from Plaintiff.

    d.  The damages caused to Plaintiff are due to the intentional and wrongful acts of Defendants.

MHB*00286

## G. Fraud and Conspiracy

22.     Plaintiff incorporates the proceeding paragraphs in support for her claim of breach of fraud and conspiracy.

23.     Defendants represented to Plaintiff when she gave them POA that they would not act against her interests and would not take funds from Plaintiff that did not belong to them and not to act against the interests of Plaintiff and in their own interests. Plaintiff relied upon these representations in trusting Defendants with POA. Further by virtue of the POA that Plaintiff had granted to them Defendants had a confidential, fiduciary relationship with Plaintiff and Defendants owed Plaintiff certain duties because of that relationship, including not to act in their own self interest to the detriment of Plaintiff and to comply with the wishes of Plaintiff and not to take funds from the Plaintiff or to give funds that belong to the Plaintiff to their children.

24.     Further, Defendants had a duty to disclose to Plaintiff's that they were taking funds from her accounts which they did not do and in fact they specifically kept it from Plaintiff that they were taking her funds from her accounts.

25.     Defendants intended that Plaintiff would rely upon their complying with their representations, duties and obligations and Plaintiff did so rely.

26.     Despite their duties and obligations and representations to Plaintiff, Defendants made the unilateral, covert decision to remove funds from the checking and savings accounts of Plaintiff and to not disclose and/or attempt to conceal such actins to Plaintiff, through misuse of their power of attorney and their refusal to return the subject funds upon revocation of the same. Further, Defendants acted for their own benefit by use of such fraud and failure to reveal their actions to Plaintiff in that Defendants have taken funds belonging to Plaintiff for their own benefit and have apparently even attempted to pay some of Plaintiffs funds to a daughter of one

MHB*00287

of Defendants. Such actions by Defendants were intended to and have unlawfully deprived Plaintiff of her property and assets.

27. Defendants acted in combination and coordination with one another with the intent to deceive and remove funds from Plaintiff and such actions have harmed Plaintiff and resulted in the removal of over $103,000.00 of assets from Plaintiff, Plaintiff has been damaged by the fraudulent actions of Defendants and the unlawful removal of her funds from Plaintiff's accounts by Defendants and Defendants refusal to return the same.

28. Absent recovery by Plaintiff of her funds, Plaintiff will be unable to support herself.

## H. CONVERSION

29. Plaintiff incorporates the foregoing paragraphs in support for her claim of conversion.

30. The subject funds were taken from the Plaintiff's accounts, through the use of Cashier's Checks and a personal check over which Plaintiff possessed ownership rights and the right of immediate possession.

31. The subject Cashier's Checks and other checks represent personal property capable of being converted.

32. By depositing said checks into newly created accounts that Defendants created, without the knowledge or permission of Plaintiff, Defendants wrongfully exercised dominion and control over the resulting funds that Defendants have refused to return to Plaintiff and have thus wrongfully exercised dominion and control over even after notice of Plaintiff's recocation of her power of attorney.

MHB*00288

33. As a result of Defendants conversion of the subject Cashier's and other checks, Plaintiff has suffered injury.

## I. THEFT LIABILITY ACT

34. Plaintiff incorporates the foregoing paragraphs in support for her claim under the Texas Theft Liability Act.

35. Defendants by taking the subject funds of Plaintiff and refusing to return them to Plaintiff after her demand for the same, had the specific intent to deprive Plaintiff of her property and have committed theft, as defined by chapter 21 of the Texas Penal Code, by taking the funds of Plaintiff to which Plaintiff is the rightful owner and entitled under Texas Law.
As a result, Plaintiff has suffered pecuniary injury in an amount equal to the amount of the funds ($103,000.00) that Defendants have taken from her.

## J. MONEY HAD AND RECEIVED

36. Plaintiff incorporates the foregoing paragraphs in support for her claim for Money had and received.

37. Defendants, due to the various actions outlined above, possess money or its equivalent by virtue of their misuse of their power of attorney for Plaintiff, which has been revoked by Plaintiff.

38. Defendants gained access and control over the subject funds, by way of Defendants' wrongful conduct. Such money is Plaintiff's money and in equity and good conscience belongs to Plaintiff and should be returned to Plaintiff.

## K. CONSTRUCTIVE TRUST

39. Plaintiff incorporates the foregoing paragraphs in support for her request for relief in the form of constructive trust.

MHB*00289

40.     Plaintiff respectfully asks that this Court place the subject funds ($103,000.00) and/or any funds obtained by Defendants or distributed by Defendants to anyone else be placed in a constructive trust for the benefit of Plaintiff because (1) Plaintiff's damages arise from a breach of special trust, fiduciary relationship, fraud, or a combination thereof; (2) the result of the Defendants wrongdoing creates unjust enrichment for Defendants; and (3) the funds can be traced to original account of the Plaintiff and such funds belong to Plaintiff and should be returned to Plaintiff.

### L.  APPLICATION FOR INJUNCTIVE RELIEF

41.     *Temporary Restraining Order*

a.     Plaintiff incorporates the foregoing paragraphs as support for her request for injunctive relief.

b.     Plaintiff's application for a temporary restraining order (TRO) is authorized by Texas Civil Practice and Remedies Code section 65.011 and seeks to maintain the status quo by preserving Plaintiff's assets/funds pending the final disposition of this matter.

c.     Plaintiff, due to the actions of Defendants has no access to her funds and due to Defendants' various actions in exercising personal control over those funds, refusal to return the funds and apparent actions to distribute or to seek to distribute some of those funds to themselves or their child, Plaintiff's funds are at risk of irreparable harm for which no remedy at law exists.

d.     It is highly probable that Plaintiff will be granted the relief she seeks, with regard to her own funds, after a trial on the merits. The subject funds can easily be traced to the two Cashier's Checks and one personal check that were taken out of Plaintiff's

MHB*00290

accounts a Prosperity Bank in Lubbock, Texas and to Plaintiff because there is documentary evidence showing that the funds were originally in the account of Plaintiff and were then transferred out via the subject checks, payable to Plaintiff, taken by Defendants. There is no record indicating that Plaintiff approved or even had notice of Defendants actions, and after Plaintiff's revocation of the subject POA and notice to Defendants of the same, Defendants have failed/refused to return to Plaintiff her funds which constitutes theft, conversion, breach of fiduciary duty, and fraud. Ample documentary evidence exists to show the subject funds were taken from the account of Plaintiff and the subject checks were issued in the name of Plaintiff. See Exhibits A, A-1 through A-8.

e. The harm that may occur to Plaintiff if this injunction is not entered is imminent and irreparable. By way of the wrongful actions of Defendants in creating accounts to deposit the subject three checks into and then their removal or attempts to remove the same via checks written to them themselves, their child or via cash, Defendants currently, although they are not POA for Plaintiff have unbridled access to funds belonging to Plaintiff and they are apparently acting in their own interests as opposed to Plaintiff's in that they have distributed or attempted to distribute the funds to themselves and or their child. If immediate action is not taken to stop Defendants any accounts to which any such money is transferred or held as cash may be lost forever. If the funds are expended or lost before final disposition of this case, Plaintiff will face the burden of attempting to collect a judgment from potentially insolvent defendants. Further, due to Plaintiff's financial condition and the fact that these funds were part of her life savings, Plaintiff may be unable to support herself if the money is not ultimately

MHB*00291

preserved and returned. Further, based upon the prior actions of the Defendants Plaintiff, who is in a wheelchair, is fearful that Defendants might seek to physically take her with them and away from where she wishes to be, which she does not want to occur, as Defendants have done so in the past. See Exhibit A.

     f.     Plaintiff seeks to restrain Defendants named in this action as well as their officers, agents, servants, employees, attorneys, bankers, children and persons in active concert or participation with Defendants, specifically including but not limited to the daughter of Defendant Nancy Stewart, Sara Turbush, and the subject Canandaigua National Bank where the $100,230.00 funds were deposited by Nancy Stewart.

     g.     Plaintiff specifically asks the court to enter a Temporary Restraining Order forbidding Defendants, Margaret Durham and Nancy Stewart as well as their officers, agents, servants, employees, attorneys, bankers, children and any persons in active concert or participation with Defendants, specifically including but not limited to the daughter of Defendant Nancy Stewart, Sara Turbush, and the subject Canandaigua National Bank from:

     i.     destroying, removing, spending, concealing, encumbering, transferring, selling, disposing, or otherwise harming or reducing the value of all cash, checks or any other property of any kind or type of asset traceable to Plaintiffs funds or accounts, specifically including but not limited to any funds removed from the accounts of Jane Durham via two Cashier's Checks and a personal check written on the Plaintiff's Prosperity accounts (ending in 1271 or ending in 6993) on or about October 15 or 17, 2013, as well as any accounts of Jane Durham into which such funds were subsequently deposited by Margaret Durham specifically including but not limited to Wells Fargo Bank accounts (ending in 2495 and 1473) in the name of Jane Durham, Margaret Durham POA and Canandaigua National Bank accounts (ending in 4070 and 4062) in the name of Jane Durham, Nancy Stewart POA.

     ii.     spending, moving, transferring, distributing, attempting to create an account for or otherwise disposing of or attempting to move any monies presently held in or previously withdrawn or attempted to be withdrawn

MHB*00292

from the accounts listed in paragraph g(i) above, placed in any other account or held in cash;

iii. destroying, removing, transferring, concealing, encumbering or otherwise disposing of or harming any assets or property acquired or purchased with funds from the accounts of Jane Durham or any other funds of Jane Durham;

iv. spending, cashing or otherwise changing the nature or character of any of checks or cash that they currently hold from the accounts or funds of Jane Durham;

v. seeking to cash, withdraw, deposit or otherwise use or distribute to themselves or anyone else, other than Plaintiff herself (via personal delivery to Plaintiff), any funds of Plaintiff or from her accounts at Prosperity Bank, Wells Fargo Bank, Canandaigua National Bank;

vi. seeking to create any accounts in the name of Plaintiff;

vii. making any expenditure of any cash they have obtained from the accounts of Jane Durham;

viii. withdrawing, disposing of or changing the nature or character of any funds or property of Jane Durham or the accounts of Jane Durham, including without limitation any checks written on the accounts of Jane Durham or any and all cash funds received by Defendants from the accounts of Jane Durham;

ix. using or attempting to use any power of attorney for Jane Durham or representing to anyone that Defendants hold any power of attorney for Jane Durham;

x. cashing any checks on, withdrawing or transferring any money or funds from or out of any accounts created at Canandaigua National Bank;

xi. destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of any property of Jane Durham, specifically including any vehicle belonging to Jane Durham or any farms or other real property or personal property belonging to Jane Durham;

xii. destroying, disposing of, or altering any financial records of the parties, including but not limited to records from financial institutions (including canceled checks and deposit slips), all records or statements relating in any way to the accounts listed in paragraph g(i) above or to monies withdrawn therefrom;

xiii. destroying, disposing of, or altering any documents, emails, electronically-stored information (information stored on CD-ROMs, diskettes, hard

MHB*00293

drives, flash drives, or other electronic devices), memoranda, letters, notes, or any other documentation or writing related in any way to the accounts listed in paragraph g(i) above or to monies withdrawn therefrom or relating to Jane Durham and the Defendants use of any power of attorney over Jane Durham;

xiv. engaging an any conduct whatsoever that interferes with, the finances or living arrangements of Jane Durham or that otherwise causes or seeks to cause any harassment, threat, impeadment or hardship to Jane Durham or her daughter Eileen Aiken;

xv. any actions to attempt to relocate or move Plaintiff to any other location or to transport Plaintiff;

xvi. coming within 250 feet of Plaintiff, Jane Durham or any location where Jane Durham is residing or staying;

h. The Court further orders Defendants, by the 10th day following service of this Order, to provide Plaintiff by and through her attorney of record an accounting for any property they possess or purport to own that can be traced to the funds or accounts of Jane Durham as well as any documents reflecting any and all actions taken by Defendants by use of any alleged power of attorney for Jane Durham.

i. Additionally, the Plaintiff requests that this Court require Defendants to account for any property they possess or purport to own that can be traced to the funds or accounts or property of Jane Durham.

J. Although the funds at issue are the rightful funds of Plaintiff, Plaintiff is willing to post a bond, if necessary.

42. *Temporary Injunction*

a. Plaintiff asks the Court to set its application for temporary injunction for a hearing and, after the hearing, issue a temporary injunction against Defendant. The injunction should provide the same relief Plaintiff requested in her plea for temporary restraining order.

MHB*00294

b.     Additionally, the Plaintiff requests that this Court require each Defendant to account for any cash or property they possess or purport to own that can be traced to the funds or accounts of Jane Durham.

43.     *Request for Permanent Injunction*

Plaintiff asks the Court to set its request for permanent injunction for a full trial on the merits and after the trial, issue a permanent injunction against Defendants. The injunction should provide the same relief Plaintiff requested in the plea for temporary injunction.

## M. ATTORNEY'S FEES

44.     As a result of the actions of Defendants, Plaintiff has been required to retain MULLIN HOARD & BROWN, L.L.P. to initiate and prosecute this action. Plaintiff is entitled to have and recover reasonable and necessary attorney's fees and expenses for all legal services rendered in bringing this action and prosecuting it in this Court. Accordingly, pursuant to this Court's authority under Texas Civil Practice and Remedies Code section as well as other applicable authority for the cause of action plead herein, Plaintiff seeks reasonable and necessary attorney's fees.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer, that upon an ex parte hearing this Court grant a temporary restraining order, and that upon final hearing, Plaintiff have and recover judgment against Defendants the damages described above; reasonable attorney's fees and expenses; injunctive and declaratory relief requested above; and other relief, general or special, to which Plaintiff may show itself justly entitled at law or in equity, together with all costs of court.

MHB*00295

Respectfully Submitted,

By:
    Molly A. Manning, SBN: 24012646
    mmanning@mhba.com
    MULLIN HOARD & BROWN, LLP
    P. O. Box 2585
    Lubbock, Texas 79408-2585
    Phone: (806) 765-7491
    Fax:   (806) 765-0553
    *Attorneys for Plaintiff*

### VERIFICATION

STATE OF TEXAS     )
                       )
COUNTY OF LUBBOCK  )

Before me, the undersigned authority, on this date personally appeared, Jane T Durham, who, being by me duly sworn, stated that she has read the above petition and that the statements contained in paragraphs 7 through 15 and paragraphs 17 through 18 (except those statements made upon information and belief) are within personal knowledge and are true and correct.

_____
Jane T. Durham

SUBSCRIBED and SWORN TO BEFORE ME on this the 28th day of October, 2013, to certify which witness my hand and official seal.

_____
Notary Public in and for the Sate of Texas

Seal:

> DAWN MAMAWAL
> My Commission Expires
> February 22, 2015

Plaintiff's Original Petition
Page 16 of 16

MHB*00296

NO. 2013-509,100

| | | |
|---|---|---|
| JANE T. DURHAM<br>Plaintiff, | § | IN THE 237th DISTRICT COURT |
| | § | |
| V. | § | OF |
| | § | |
| MARGARET L. DURHAM AND<br>NANCY C. STEWART<br>Defendants. | § | LUBBOCK COUNTY, TEXAS |

## DEFENDANTS' ORIGINAL COUNTER-CLAIM

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Margaret L. Durham and Nancy C. Stewart, Defendants, and file this their Original Counter-Claim seeking the relief set out herein in this proceeding, and for cause of action would show the Court the following:

### I.
### Discovery

Discovery in this case is intended to be conducted under level 2 of Rule 190 of the Texas Rules of Civil Procedure.

### II.
### Jurisdiction and Venue

This Court has jurisdiction and venue of this proceeding.

### III.
### Parties

The parties to this counter-claim are Margaret L. Durham and Nancy C. Stewart, hereinafter referred to as "Counter-Plaintiffs", Jane T. Durham, hereinafter referred to as "Counter-Defendant" and Eileen Aiken, who Counter-Plaintiffs seek to join in this proceeding as a party as set out below, with such party being referred to as "Cross Defendant".

1



MHB*00249

## IV.
### Joinder of Party

The Counter-Plaintiffs join Eileen Aiken, Cross-Defendant, in this proceeding, because Cross-Defendant is currently acting as the exclusive caretaker for the Counter-Defendant, Jane Durham, and her presence is needed for a just adjudication of issues in this case.

## V.

The Counter-Plaintiffs seek only declaratory judgment relief in this proceeding, and do not seek monetary damages.

## VI.
### Background Facts

The fact allegations related to the relief sought in this counter-petition are the following:

1.      Counter-Defendant in this case, Jane T. Durham, is 92 years of age, she is a widow and has seven children, including Counter-Plaintiffs and the Cross Defendant.

2.      For more than 20 years, Plaintiff has been assisted by one or more of her children in the handling of her financial affairs, as well as her personal living circumstances.   Most of children have acted as under powers of attorney in the handling of her financial affairs.

3.      The Counter-Defendant was estranged from her daughter, Eileen Aiken, for more than 12 years, prior to 2012.  During that period, neither Counter-Plaintiffs nor other members of the Counter-Defendant's had contact with the Cross Defendant.  The Counter-Defendant made a loan to the Cross Defendant, before they were estranged, to purchase a home.  The loan was not repaid, and Counter-Defendant changed her Will, in August 2012, to exclude Cross Defendant as a beneficiary, and she bequeathed, in that Will, all interest the Cross Defendant would otherwise have received to the children of the Cross Defendant, after requiring the deduction of the balance on the Promissory Note owed to her by the Cross Defendant from such share

2

MHB*00250

4. For approximately 11 years, prior to August 2012, Counter-Defendant lived in Lufkin, Texas, and, at that time, her financial affairs were handled by her daughter, Barbara Flourney, who lived in Lufkin, Texas at that time. Barbara Flourney made arrangements for the Counter-Defendant's living circumstances while she lived in Lufkin, Texas.

5. In August 2012, Counter-Defendant became dissatisfied with her living circumstances in Lufkin, Texas, and, with the assistance of the Counter-Plaintiffs, and the consent of Barbara Flourney, she relocated to Lubbock, Texas and began to reside in an assisted living facility known as Promiseland.

6. On November 17, 2012, Counter-Defendant executed a Durable Power of Attorney naming the Counter-Plaintiffs as her attorneys-in-fact, with broad powers as set out in the Durable Power of Attorney.

7. Prior to the time of the execution of the Durable Power of Attorney to the Counter-Plaintiffs, the Counter-Defendant renewed her relationship with her daughter, Eileen Aiken. Counter-Defendant expressed an interest to Counter-Plaintiffs in having Eileen Aiken live with her as a full time caretaker. Counter-Plaintiffs determined, at that time, this arrangement would be more appropriate for the Counter-Defendant than her circumstances at the assisted living facility at which she was then living. As a result, a fifth-wheel camper trailer was acquired with funds advanced by Counter-Defendant, through Counter-Plaintiffs' Powers of Attorney, for the purchase of the camper trailer. As a part of that transaction, the Counter-Plaintiffs, with the approval of Counter-Defendant, agreed that the Cross Defendant would be paid $3,600.00 per month, beginning March 1, 2013, from which the Cross Defendant was to pay the living expenses of herself and the Counter-Defendant, and Cross Defendant was to become the full time caretaker of the Counter-Defendant.

3

MHB*00251

8. In August or September 2013, without the knowledge or approval of the Counter-Plaintiffs, a vehicle was purchased, utilizing Counter-Defendant's funds, for the sum of $33,000.00, which represented approximately 25 percent of the Counter-Defendant's liquid assets.

9. Counter-Plaintiffs, upon receiving information concerning the acquisition of the motor vehicle, became concerned that the Cross Defendant had influenced the Counter-Defendant to expend more funds for the purchase of an automobile than were prudent under the circumstances. At that time, Cross Defendant stopped all communication between the Counter-Defendant and the Counter-Plaintiffs, as well as other children of the Counter-Defendant. Counter-Plaintiffs, and other children, were unable to make contact or to locate the Counter-Defendant, to determine her circumstances.

10. Counter-Plaintiffs, as a result of the concern over the Cross Defendant's influence of the Counter-Defendant, took steps to remove funds from the accounts of Counter-Defendant, for the purpose of protecting the funds from imprudent actions influenced by the Counter-Defendant. The total funds removed consisted of approximately $103,000.00 from a savings and checking account, which Counter-Plaintiffs are now prepared to restore to the accounts of the Counter-Defendant, upon it being determined that such funds are protected and utilized only for the living needs and expenditures necessary for the welfare of the Counter-Defendant.

11. Counter-Plaintiffs believe, in view of the occurrence of recent events, that the Counter-Defendant, due to the influence being exercised over her, her age and frailty, her dependence upon the Cross Defendant, and her diminishing capacity to make decisions in her own best interest, that the Counter-Defendant, at this time, lacks capacity to make appropriate decisions concerning her best interest and the handling and management of her personal and

4

MHB*00252

financial affairs.

## VII.
### Declaratory Relief

Counter-Plaintiffs are seeking a declaratory judgment pursuant to the provisions of Chapter 37 of the Texas Civil Practice & Remedies Code, to obtain a judicial declaration of the appropriate arrangement for the handling and management of the personal and business affairs of the Defendant under the current cirucmstances. A genuine dispute exists between the Counter-Plaintiffs and the Cross Defendant, concerning the appropriate handling and management of the Counter-Defendant's financial and personal affairs. Counter-Plaintiffs seek a declaratory judgment from the Court determining whether the Plaintiff is incapacitated or under the influence of Eileen Aiken to the point that she cannot take care of her personal or financial affairs prudently.

## VIII.
### Attorney's Fees and Costs

Counter-Plaintiffs seek recovery of their reasonable and necessary attorney's fees and costs in filing this proceeding pursuant to the Uniform Declaratory Judgments Acts as set out in Chapter 37 of the Texas Civil Practice & Remedies Code.

WHEREFORE, PREMISES CONSIDERED, Counter-Plaintiffs pray that, upon final hearing, Counter-Plaintiffs have relief in accordance with the allegations in this counter-claim, together with attorney's fees, costs of court, and general relief.

Respectfully submitted,

The Fouts Law Firm

By: _Aubrey J Fouts_____
Aubrey J. Fouts
Texas Bar No. 07315000

5

MHB*00253

plication for post judgment correspondence asks the clerk to send an abstract of judgment to Smith. The application has a blank for "Judgment Debtor(s) Address if changed." In that blank, Smith's Cahoba address is listed. It is suspicious that MCMC used Smith's new Cahoba address the only time that notice was to be sent by mail. It is also suspicious that MCMC used the Cahoba address on the very day that the trial court entered judgment against Smith. However, these are mere suspicions, not facts that show that Smith failed to receive notice of the motion for and hearing on summary judgment. The suspicions could lead us to several conclusions, including the one that MCMC argued to the trial court at the hearing on Smith's motion for new trial: that Smith holds title to numerous properties on which he could be served notice, which include the Cahoba and Hudson addresses. Without facts in the record to support his allegations of lack of notice, Smith fails to rebut the presumption of valid service created by the certificate of service on the motion for summary judgment.

Lastly, in point of error two, Smith claims that the certificate of service on the motion for summary judgment was defective because it did not indicate what method was used to serve the motion: certified or registered mail, fax, or personal delivery. There is no requirement that the certificate of service detail the method of service used. TEX. R.CIV.P. 21a.

Although other means are available to Smith to challenge the judgment, the trial court did not abuse its discretion in denying his motion for new trial. Because the motion for new trial was defective and because nothing in the record rebuts the presumption of valid service, we overrule point of error two.

## ATTORNEY'S FEES

[6] In point of error three, Smith claims that the trial court erred in awarding attorney's fees to MCMC. Although the original petition asked for attorney's fees, the judgment did not award them. Therefore, this point is moot.

## APPEAL FOR DELAY

[7] MCMC, in its only cross-point, asserts that Smith filed this appeal for delay and without sufficient cause and asks this court to award damages under TEX.R.APP.P. 84. MCMC claims that Smith purposely provided the incorrect address to the trial court and that Smith's argument to this court is frivolous. However, the record does not reflect that Smith purposely misled the trial court. Additionally, lack of notice of a motion and hearing, which is a denial of due process, is a sufficient cause for appeal. We overrule MCMC's cross-point.

Having disposed of Smith's three points of error and MCMC's cross-point, we affirm the judgment of the trial court.



Richard J. CLANIN, Appellant,

v.

Frances CLANIN, Appellee.

No. 2-95-071-CV.

Court of Appeals of Texas,
Fort Worth.

March 28, 1996.

After petition and counterpetition for divorce were filed, husband and wife entered into settlement agreement regarding divorce and related issues, and the 324th District Court, Tarrant County, Brian A. Carper, J., entered final decree of divorce. Husband appealed. The Court of Appeals, Chuck Miller, J. (Assigned), held that: (1) agreement for judgment provided basis for decree; (2) trial court properly divided community estate to extent not set forth in property settlement agreement; and (3) provision in final decree contrary to terms of agreement reached by parties was in error.

Affirmed in part, reversed in part and remanded.

**1. Appeal and Error ⟜1008.1(2)**

In case tried to court, findings of fact have same force and dignity as jury's verdict upon questions and are reviewable for legal and factual sufficiency of the evidence by same standards applicable in reviewing sufficiency of evidence supporting jury's finding.

**2. Appeal and Error ⟜931(1)**

In considering "no evidence" or legal sufficiency point, appellate court considers only evidence favorable to decision of trier of fact and disregards all evidence and inferences to the contrary.

**3. Appeal and Error ⟜1010.2**

If there is more than a scintilla of evidence to support the finding, a no-evidence challenge fails.

**4. Appeal and Error ⟜989, 1012.1(5)**

In considering factual sufficiency point, appellate court assesses all the evidence and reverses for new trial only if challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust.

**5. Appeal and Error ⟜1012.1(4)**

When trial court's findings and conclusions are supported by competent probative evidence, they should not be disturbed on appeal unless they appear to be against the great weight and preponderance of the evidence so as to be clearly wrong and unjust.

**6. Judgment ⟜72**

Agreement for judgment will not be enforced unless agreement is reduced to writing, signed and filed with papers as part of record, or unless it is made in open court and entered of record. Vernon's Ann.Texas Rules Civ.Proc., Rule 11.

**7. Husband and Wife ⟜278(1)**

Compliance with rule requiring agreement for judgment to be made in open court and entered of record satisfies statutory requirement of written agreement in divorce cases, since sworn testimony of parties given to court reporter in open court memorializes parties' consent and can also be reduced to writing, and thus has same legal effect as written agreement signed by parties. Ver-

non's Ann.Texas Rules Civ.Proc., Rule 11; V.T.C.A., Family Code § 3.631.

**8. Husband and Wife ⟜278(1)**

Valid written agreement existed and provided basis for court's agreed divorce decree, where parties and attorneys announced in open court that they had reached agreement and that agreement was dictated into record in form of sworn testimony of parties, and handwritten statement styled "Rule 11 Agreement," announcing agreement and stating that terms of agreement had been entered of record, was signed by parties and attorneys and filed with papers as part of record; evidence was sufficient for court to find that written agreement allowed court to proceed to hear parties prove up terms of their agreement. Vernon's Ann.Texas Rules Civ.Proc., Rule 11; V.T.C.A., Family Code § 3.631.

**9. Husband and Wife ⟜279(2)**

Ex-husband was too late in voicing his dissatisfaction with judgment of divorce based on agreement for judgment in his motion for new trial and failed to timely repudiate his consent; there was no evidence in record of ex-husband's objection or any other evidence present in record that ex-husband made known to court that he was withdrawing his consent to the agreement.

**10. Judgment ⟜72**

Consent judgment cannot be rendered when one party does not consent at time judgment is actually rendered although party previously may have consented to agreement.

**11. Compromise and Settlement ⟜18(1)**

Party may revoke his consent to settle a case any time before judgment is rendered.

**12. Divorce ⟜286(9)**
   **Husband and Wife ⟜279(1)**

Subjects not mentioned in agreement for judgment but included in final divorce decree were not beyond scope of agreement made by parties and did not provide basis for reversal of divorce decree; court set forth property settlement agreement to extent as made by parties and, as to remainder of estate, made "just and right" division. V.T.C.A., Family Code §§ 3.63, 3.631.

**13. Divorce ⬦254(1)**

**Husband and Wife ⬦272(4)**

Court may divide community estate of parties upon divorce by itself partitioning the estate, by setting forth property settlement agreement in decree, or by incorporating such an agreement by reference in decree.

**14. Divorce ⬦249.2, 252.3(2)**

Court must make "just and right" division of property of community estate, to extent property is not covered by property settlement agreement. V.T.C.A., Family Code §§ 3.63, 3.631.

**15. Divorce ⬦249.2**

Provision of final divorce decree, instructing each party to file separate individual income tax return, was in error, where parties had agreed to file joint income tax return in property settlement agreement. V.T.C.A., Family Code § 3.631(b).

**16. Judgment ⬦87**

Final judgment founded upon settlement agreement reached by parties must be in strict or literal compliance with terms of that agreement.

---

Appeal from 324th District Court, Tarrant County; Honorable Brian A. Carper, Judge.

John M. Groce, Fort Worth, for appellant.

Jeffery D. Gooch, Fort Worth, for appellee.

Before CAYCE, C.J., DAUPHINOT, J., and CHUCK MILLER, J. (Assigned).

**OPINION**

CHUCK MILLER, Justice, Sitting by Assignment.

This is an appeal from an agreed decree of divorce. In five points of error, appellant Richard Clanin asserts the trial court erred in finding that the parties had entered into a valid agreement under Rule 11 of the Texas Rules of Civil Procedure; and, even if there was a valid agreement, appellant withdrew his consent prior to entry of the judgment. Also, appellant argues that the trial court added terms and provisions in the Final De-

cree of Divorce which were not part of the agreement reached by the parties. Although we hold that the agreement reached by the parties constituted a valid Rule 11 agreement whose material terms were included in the Final Decree of Divorce, we nonetheless remand the cause to the trial court for reformation of one provision of the decree.

After a petition and a counter-petition for divorce were filed, the parties appeared before an Associate Judge on September 7, 1994. At this hearing, the parties represented that they had entered into a settlement agreement regarding their divorce and related issues. Rather than dictating into the record the proposed agreement, the attorneys chose to enter the agreement into the record by direct and cross-examination of the parties. After hearing the testimony of the parties, the Associate Judge asked if the parties had signed a Rule 11 agreement. Appellee's attorney told the court that a Rule 11 agreement had not been signed at that point, but indicated to the court that an agreement had been written out. The handwritten agreement that appellee was referring to, and which appears in the record, reads:

Clanin v. Clanin & Interest of
Randall & Regina Clanin

*Rule 11 Agreement*

On the 7th day of Sept. 1994 came petitioner & respondent and pursuant to rule 11 of TRCP have agreed, settled and compromised cause # 324-207287-94 and caused the same to be recorded under oath by the court reporter in the 324 Associate Justice Court and the Hon. Patricia Andrews associate judge has approved the same and so ordered.

Signed & entered this the *7th* day of *September* 1994.

/s/ Patricia B. Andrews
Associate Judge

Approved as to Form & Content—

/s/ *Frances G. Clanin*

/s/ *Gene de Bullet, Jr.*

/s/ *Richard Clainin*

/s/ *Clint Oldham, atty.*   Filed 9–07–94
PBA [initials]

The Associate Judge made a docket entry indicating the divorce was granted as per the Rule 11 agreement signed by the parties.

The Presiding Judge signed the Agreed Final Decree of Divorce on December 7, 1994. Appellant filed his Motion for New Trial on January 6, 1995. Corrected Findings of Fact and Conclusions of Law were filed on March 3, 1995. Appellant's Motion for New Trial was overruled by operation of law.

### Points of Error

Appellant asserts in his first point of error that the trial court erred in rendering and entering the Agreed Final Decree of Divorce because there was no agreement upon which the trial court could base its agreed decree. In point of error two, appellant argues that the evidence is either legally or factually insufficient to support the trial court's conclusion of law that the agreement was made in open court and entered of record and is a Rule 11 agreement. Appellant argues in point of error three that there was no valid agreement because he withdrew his consent to the agreement prior to rendition of the judgment. Appellant generally asserts in point of error four that the evidence was either legally or factually insufficient to support the divorce decree. In point of error five, appellant complains that the evidence was either legally or factually insufficient to support the trial court's finding that there was a written agreement which allowed the trial court to proceed with a Rule 11 evidentiary "prove up." Because all of appellant's points of error are related and depend on the Rule 11 agreement issue, we will address all five points together.

### Standard of Review

[1–5] Because appellant couches his points of error in terms of sufficiency of the evidence, we will recount the now-familiar standard of review. In a case tried to the court, findings of fact have the same force and dignity as a jury's verdict upon questions and are reviewable for legal and factual sufficiency of the evidence by the same standards applicable in reviewing the sufficiency of the evidence supporting a jury's finding. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991); *Cole v. Cole*, 880 S.W.2d 477, 479 (Tex.App.—Fort Worth 1994, no writ). In considering a "no evidence" or legal sufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex.1990); *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Lewelling*, 796 S.W.2d at 166. In considering a factual sufficiency point, we assess all the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Therefore, when the trial court's findings and conclusions are supported by competent probative evidence, they should not be disturbed on appeal unless they appear to be against the great weight and preponderance of the evidence so as to be clearly wrong and unjust. *Baccus v. Baccus*, 808 S.W.2d 694, 698 (Tex.App.—Beaumont 1991, no writ); *Lindner v. Hill*, 673 S.W.2d 611, 614 (Tex.App.—San Antonio 1984), *aff'd*, 691 S.W.2d 590, 592 (Tex.1985).

### Rule 11 Agreement

[6–8] An agreement for judgment will not be enforced unless the agreement is reduced to writing, signed and filed with the papers as part of the record, or unless it is made in open court and entered of record.[1] Tex.R.Civ.P. 11; *Kennedy v. Hyde*, 682

---

1. We note that the Texas Supreme Court has recently addressed Rule 11 agreements in *Padilla v. LaFrance*, 907 S.W.2d 454 (Tex.1995). However, because *Padilla* involved a series of letters and did not involve the "made in open court and entered of record" portion of Rule 11, as does the present case, we find it inapplicable.

S.W.2d 525, 528 (Tex.1984). Compliance with the "open court and entered of record" portion of Rule 11 satisfies the Family Code section 3.631 requirement of written agreements in divorce cases. *McLendon v. McLendon,* 847 S.W.2d 601, 608 (Tex.App.—Dallas 1992, writ denied). This is so because the sworn testimony of the parties given to the court reporter in open court memorializes the parties' consent and can also be reduced to writing. Therefore, this procedure has the same legal effect as a written agreement signed by the parties and, in fact, results in a written agreement that meets the requirements of Family Code section 3.631 for agreements in divorce cases to be in writing. *Id.*

In the present case, the statement of facts clearly shows that the parties and attorneys announced in open court they had reached an agreement and that the agreement was dictated into the record in the form of sworn testimony of the parties. Further, the handwritten statement styled "Rule 11 Agreement," announcing their agreement and that the terms of the agreement had been entered of record, was signed by the parties and attorneys and filed with the papers as part of the record. Clearly, there was sufficient evidence for the court to conclude the existence of a valid Rule 11 agreement. Additionally, this evidence was sufficient for the court to find that the written agreement allowed the court to proceed to hear the parties "prove up" the terms of their agreement. The requirements of Rule 11 were met and, as such, the requirements of section 3.631 of the Family Code were also met and provided a basis for the court's agreed decree.

[9–11] In support of his third point of error, appellant argues that he revoked his consent to the agreement prior to the rendition of judgment. He states in his brief on appeal that he objected to a motion for entry of judgment and, therefore, effectively repudiated the agreement. It is well settled that a consent judgment cannot be rendered when one party does not consent at the time judgment actually is rendered although that party previously may have consented to the agreement. *Burnaman v. Heaton,* 150 Tex. 333, 240 S.W.2d 288, 291 (1951); *Giles v.*

*Giles,* 830 S.W.2d 232, 235 (Tex.App.—Fort Worth 1992, no writ). A party may revoke his consent to settle a case any time before the judgment is rendered. *Samples Exterminators v. Samples,* 640 S.W.2d 873, 874–75 (Tex.1982).

However, in this case, there is no evidence whatsoever in the record of appellant's objection or any other evidence present in the record that appellant made known to the court that he was withdrawing his consent to the agreement. Appellant's contention that he objected at the hearing on Appellee's motion for judgment is not supported by the record. Appellant was too late in voicing his dissatisfaction with the judgment in his motion for new trial and failed to timely repudiate his consent. *See Hahne v. Hahne,* 663 S.W.2d 77, 79 (Tex.App.—Houston [14th Dist.] 1983, no writ).

We hold there was sufficient evidence to support the existence of a valid Rule 11 agreement to form the basis of the court's decree. We also hold that appellant did not revoke his consent to the agreement prior to the rendition of the court's judgment. Appellant's points of error one, two, three, and five are overruled.

### Variance in Agreement and Decree

[12] In support of his fourth point of error, appellant argues that the trial court's decree provided additional and contrary terms to the agreement. Specifically, appellant complains that such subjects as dispute resolution, the splitting 50/50 of the uninsured health care expenses of the children, awarding financial accounts solely in any one party's name to that party, and other similar issues, were never mentioned in the agreement but appear in the final divorce decree.

[13, 14] The court may divide the community estate of the parties upon divorce by itself partitioning the estate, by setting forth a property settlement agreement in the decree, or by incorporating such an agreement by reference in the decree. *McCaskill v. McCaskill,* 761 S.W.2d 470, 473 (Tex.App.—Corpus Christi 1988, writ denied). In the present case, the court set forth the property settlement agreement, to the extent as made

by the parties, in the decree. As to the remainder of the estate, the court must follow the mandate of sections 3.63 and 3.631 of the Family Code to make a "just and right" division of the property. *See id.; see also,* TEX.FAM.CODE ANN. §§ 3.63, 3.631 (Vernon 1993). Here, the court did not find the agreement was not just and right; therefore, the agreement of the parties was binding on the court to the extent of the property covered by the agreement. The other provisions in the decree reflect the court's "just and right" division of the rest of the community estate. None of these provisions either are beyond the scope of the agreement made by the parties or provide a basis for reversal. *See Ames v. Ames,* 860 S.W.2d 590, 593 (Tex.App.—Amarillo 1993, no writ). We find nothing in the record to suggest that the division made by the court was not just and right.

[15, 16] We do agree with appellant, however, that one provision in the court's final decree, instructing the parties to file separate income tax returns for the 1994 calendar year, is contrary to the terms of the agreement reached by the parties and entered of record. A final judgment founded upon a settlement agreement reached by the parties must be in strict or literal compliance with the terms of that agreement. *Vickrey v. American Youth Camps, Inc.,* 532 S.W.2d 292 (Tex.1976). Here, the testimony indicated that the parties agreed to file a joint income tax return for the 1994 calendar year. The court's decree instructs each party to file a separate individual income tax return. The terms of the agreement are binding on the court unless it finds that the agreement is not just and right. TEX.FAM.CODE ANN. § 3.631(b) (Vernon 1993). It was error for the court to provide a term contrary to the agreement reached by the parties, and this term is subject to reformation. Consequently, we sustain appellant's fourth point of error as to this particular provision in the court's decree. Appellant's five points of error are otherwise overruled.

We therefore affirm the trial court's granting of the divorce, and we reverse the remainder of the judgment. We remand the cause to the trial court for the limited purpose of reforming the decree and entering judgment in accordance with the agreement reached by the parties concerning the joint filing of taxes for the calendar year 1994.



**John Paul DIXON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–95–097 CR.**

Court of Appeals of Texas,
Beaumont.

Submitted Oct. 23, 1995.

Decided April 3, 1996.

Defendant was convicted in the 252nd District Court, Jefferson County, Larry Gist, J., of possession of marijuana. Defendant appealed. The Court of Appeals, Burgess, J., held that defendant, who was passenger in automobile in which marijuana was found, did not exercise actual care, control and management over marijuana and thus did not possess marijuana.

Reversed and acquitted.

Walker, C.J., dissented and filed opinion.

**1. Criminal Law** ⚖️1144.13(2.1), 1159.2(7)

In reviewing challenge to sufficiency of evidence, Court of Appeals views all evidence in light most favorable to verdict to determine whether any rational trier of fact could have found all elements of charged offense to have been proven beyond reasonable doubt.

**2. Criminal Law** ⚖️1159.6

Standard of review for sufficiency of evidence is the same for direct and circumstantial evidence cases.